[Civ. No. 16998. Second Dist., Div. One. Dec. 16, 1949.]

LEOLA JUNE COLE, a Minor, etc. et al., Appellants, v. ORA LEE RIDINGS et al., Respondents.

Preston W. Johnson and Henry F. Walker for Appellants.

Forrest A. Betts and Gerald F. Smith, Jr., for Respondents.

DRAPEAU, J.—This is an appeal by plaintiffs from a judgment entered on the verdict in favor of defendants. The action is for damages for personal injuries sustained by the minor plaintiff in a collision between her and a motorcycle operated by defendant Smith. The minor plaintiff will be referred to herein as appellant.

Both sides concede that the evidence although highly conflicting would support a verdict and judgment either way on the issues of negligence and contributory negligence. However, appellant maintains that the court committed prejudicial error in instructions given and refused, particularly in view of the closeness of the question whether there was contributory negligence on the part of appellant.

The accident occurred at 4:30 p.m. of June 25, 1947, a dry, clear day, in the city of Long Beach on Temple Street about 100 feet north of its intersection with Eighth Street, both streets having a width of 36 feet.

Appellant Leola June Cole, aged 10 years, was visiting her grandmother, who lived in the second house north of said intersection on the east side of Temple Street. An ice cream vendor traveling south on Temple Street stopped his truck directly across the street from the grandmother's house. Appellant and three small companions crossed the street and waited in line with other children at the back of the truck to buy ice cream. While so waiting, the grandmother of appellant came to her front door and seeing the child near the truck, called to ask if she needed any money. Appellant looked in both directions and started toward her grandmother. She testified that when she looked south toward Eighth Street she saw nothing on Temple Street between her and the corner, but she had a recollection that an automobile on Eighth Street was then crossing the intersection. While walking across Temple Street and before she reached the east curb thereof, she was struck and rendered unconcious by a motorcycle operated by respondent Smith.

Respondent Smith, in the course of his employment of a pickup and delivery service for Riding Motors, had delivered a Cadillac car and was on his way back to his employer's garage driving a three-wheel Harley Davidson motorcycle north on Temple Street. As he approached the intersection of that street with Eighth Street, an automobile traveling east on Eighth Street passed through the intersection ahead of him; he shifted gears and crossed the intersection observing for the first time that an ice cream truck was standing about 100 feet away, facing south on the west side of Temple Street. He saw no people about the truck, until the front of his motorcycle was about even with the front end thereof, when he saw appellant for the first time; he was then 18 to 20 feet away from her and was driving at a speed of 15 to 20 miles per hour. This witness testified that appellant was facing away from him and was 3 to 4 feet west of the center line of Temple Street; that she went about 8 feet from the time he first saw her until the impact, which was a point 3 to 4 feet east of the center line of Temple Street and about 15 feet west of the east curb thereof; that he swerved to the left to avoid appellant, but she came in contact with the right front shield or right front handlebar of the motorcycle and threw it out of control. That only a second of time elapsed from the time he first saw her and the impact and that he applied his brakes without success just before the impact. He testified that the little girl "darted right out in front of the motorcycle . . . From behind the ice cream truck. . . . Running . . . At the time she darted out she was facing the front of her grandmother's house in a northeasterly direction and then just before the impact she turned and looked at me. . . . She paused just a very little . . . Right in front of the motorcycle."

The grandmother testified that the child was 4 or 5 feet behind the ice cream truck; that she glanced both ways as she left the truck and walked toward her across the street.

The driver of the truck testified he heard a woman's voice call out whereupon appellant "ran out from the group of children into the street . . . she ran . . . was running when she started out"; that he glanced back to his truck after she left and glanced up again just in time to see the motorcycle hit her; that she was carried about 15 feet; that the motorcycle traveled about 45 or 50 feet after the impact and knocked over another motorcycle parked at the curb on the east side of the street.

The place of the collision was in a residential district, there

being no marked crosswalks or traffic signals at the intersection. Appellant suffered severe injuries.

It is urged that prejudicial error was committed in giving the instruction *re* presumption of due care, to wit: "At the outset of this trial, each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law. These presumptions are a form of prima facie evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there *is* other evidence that *conflicts* with such a presumption, it is the jury's duty to weigh that evidence against the presumption, and any evidence that may support the presumption, to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof." (Emphasis included.)

It is argued that in the circumstances presented herein, the jury might well have found the evidence of respondents' negligence to preponderate had the instruction not been given; but faced with the requirement laid down therein, the jury apparently concluded that the evidence of negligence, although sufficient to preponderate over conflicting evidence, was insufficient to preponderate over such conflicting evidence plus the presumption of due care.

In *Clary* v. *Lindley*, 30 Cal.App.2d 571, 573 [86 P.2d 920], the following appears:

" 'A disputable presumption is a substitute for proof of facts. It is a species of evidence that may be accepted and acted upon when there is no other evidence to uphold the contention for which it stands.' (*Noble* v. *Key System, Ltd.*, 10 Cal. App.2d 132, 137 [51 P.2d 887].) It may be controverted by evidence. (Code Civ. Proc., sec. 1961.) It is dispelled when evidence is produced by the party or his witnesses covering the subject of the presumption. (*Rogers* v. *Interstate Transit Co.*, 212 Cal. 36 [297 P. 884].) When there is a conflict in the evidence introduced by opposing parties, there is no room for the presumption (*Kelly* v. *Fretz*, 19 Cal.App.2d 356 [65 P.2d 914], for the simple reason that one side or the other would be forced to introduce evidence to controvert other evidence, plus a presumption. (*Paulsen* v. *McDuffie*, 4 Cal.2d 111 [47 P.2d 709] ; *Mundy* v. *Marshall*, 8 Cal.2d 294 [65 P.2d 65].) "

In *Barker* v. *City of Los Angeles*, 57 Cal.App.2d 742, 749 [135 P.2d 573], the court discussed an instruction similar

to that here under review, to wit: "From apparently conflicting opinions of appellate courts of California, the following rules may be adduced:

"(1) It is error for the trial court to give an instruction such as that set forth above where the evidence introduced by the plaintiff discloses the acts and conduct of the injured party immediately prior to or at the time of the accident. (*Speck* v. *Sarver*, 20 Cal.2d 585, 587, 588 [128 P.2d 16]; *Campbell* v. *City of Los Angeles*, 28 Cal.App.2d 490, 491 [82 P.2d 720].)

"(2) Whether the giving of such an instruction when the evidence of the plaintiff discloses the acts and conduct of the injured party at the time of the accident constitutes prejudicial error depends on the circumstances of each case. (*Speck* v. *Sarver*, supra.)"

Applying the above rules to the instant cause, it was prejudicial error for the trial court to give the instruction on the presumption of due care, when considered in conjunction with the conflicting testimony which formed the basis of the jury's decision and also with other alleged erroneous instructions hereinafter discussed.

It is conceded by both sides that the court correctly instructed the jury on the conduct required of a minor, to wit:

"A child is not held to the same standard of conduct as an adult and is only required to exercise that degree of care which ordinarily is exercised by children of like age, mental capacity and experience. There is no precise age at which, as a matter of law, a child comes to be held accountable for her actions by the same standard as applies to an adult. It is for you to determine the mental capacity and experience of Leola June Cole, and whether her conduct was or was not such as might reasonably have been expected from a child of like age, capacity and experience, under the same or similar circumstances."

However, appellants maintain that the court erroneously instructed the jury to the effect (1) that under section 562(a), Vehicle Code, every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to all vehicles upon the roadway; (2) that if a pedestrian crosses other than within a marked or unmarked crosswalk at an intersection, the law requires the pedestrian to yield the right of way to all vehicles upon the roadway so near as to constitute an immediate hazard; (3) that "Before attempting to cross a street that is being used for the traffic of motor vehicles, it is a pedestrian's duty to make reasonable observations to learn the traffic conditions

confronting her, to look to that vicinity from which, were a vehicle approaching, it would immediately endanger her passage; and to try to make a sensible decision whether it is reasonably safe to attempt the crossing.''

It is argued that by these instructions the jury was told as a matter of law that if the minor failed to yield the right of way or failed to observe traffic conditions, she was guilty of contributory negligence; and thus that they invaded the province of the jury, were in conflict with the correctly given instruction on the standard of care required of a minor, and were misleading as guides to the jury in its determination of questions of fact. Also, that the first of such instructions as given incompletely and incorrectly stated the law thereby placing a greater burden on the minor than is required of an adult and gave respondent driver an absolute right where none existed: i. e., the court did not include in the instruction subdivision (b) of section 562, Vehicle Code, which reads: ''The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway.''

While the duty to yield the right of way imposed on a pedestrian by section 562, *supra,* may call for a higher degree of care while crossing between intersections, the real question of fact in such a case is whether the required care has been exercised and not merely whether or not the right of way has been actually yielded. These instructions emphasized the duty of appellant to yield the right of way and failed to inform the jury clearly that such duty was not absolute and that the real question was whether appellant exercised reasonable care under the circumstances then and there existing, to wit: that degree of care required of a minor under like circumstances. (See *Shipway* v. *Monise,* 59 Cal.App.2d 565, 571 [139 P.2d 60].)

This is a very close case on its facts, particularly on the issue of negligence of the participants. It should be noted that there is some evidence of contributory negligence on the part of appellant, but it can hardly be said that the record shows contributory negligence as a matter of law; that was an issue of fact for the jury. It cannot be assumed under the circumstances of this case that the jury's verdict for respondents was based on the evidence of contributory negligence alone; it may well have been predicated upon a theory of defense permitted by one or more of the erroneous instructions discussed above. (*Oettinger* v. *Stewart,* 24 Cal.2d 133,

142

140 [148 P.2d 19, 156 A.L.R. 1221], citing *O'Meara* v. *Swortfiguer*, 191 Cal.12, 15 [214 P. 975], in which it is stated:

"It is true that in determining whether or not a verdict is supported by the evidence, we must assume that the jury accepted the view most favorable to the respondent. However, in determining whether or not the instructions given are correct, we must assume that the jury might have believed the evidence upon which the instruction favorable to the losing party was predicated, and that if the correct instruction has been given upon that subject the jury might have rendered a verdict in favor of the losing party."

Likewise in the case here under review. Therefore it was prejudicial error to give the instructions complained of.

▮ It is finally contended that the trial court erred in refusing to instruct the jury on the doctrine of the last clear chance.

The instruction requested by appellants recited that the doctrine might be invoked if the following six elements were present in the evidence:

1. That plaintiff by his own negligence got himself into a position of danger;

2. That thereupon, either it was physically impossible for him through the exercise of ordinary care to escape from the danger, or he was totally unaware of impending danger in his position;

3. That the defendant had actual knowledge of plaintiff's perilous situation;

4. That it appeared to the defendant, or would have appeared to him in the exercise of ordinary care, that plaintiff either was unaware of the danger impending in the situation or was unable to escape therefrom through the exercise of ordinary care;

5. That after the defendant acquired actual knowledge of plaintiff's perilous situation, he had a clear opportunity to avoid the accident and could have done so by exercising ordinary care;

6. That the defendant did not avail himself of that opportunity, but by negligent conduct proximately caused the accident.

Respondents concede the existence of the first four elements but dispute the applicability of the doctrine, urging that the fifth and sixth elements were not established because of an absolute failure to show that it was physically possible for even an exceptionally skilled individual to stop the three-wheel motorcycle within 18 to 20 feet.

As a matter of fact, Police Officer Hyatt riding a three-wheel Harley Davidson motorcycle made some tests at the place of the collision a few days before the instant trial, and testified that traveling at speeds of 15, 20 and 25 miles per hour, he was able to stop his vehicle in 10, 15 and 18 feet respectively.

It is shown by the record that when appellant started to cross the street, she looked but saw nothing between her and the intersection; that she saw an automobile crossing the intersection on Eighth Street. Respondent shifted gears and crossed the intersection after an automobile traveling east on Eighth Street passed in front of him. Respondent was then 100 feet south of the ice cream truck.

From this evidence the jury could have found that respondent was from 90 to 100 feet from appellant when he first saw her walking diagonally across Temple Street with her back to him.

Again, there was testimony that appellant was four or five feet behind the truck when she started to cross the street; that the truck was 18 to 22 feet long, and that respondent admitted seeing appellant when the front end of his motorcycle was about even with the front end of the truck. Under this view, the jury could have found that appellant was 26 or 27 feet distant when respondent first saw her, and that by the exercise of ordinary care he could have avoided hitting her, i. e., by merely slowing his vehicle.

It was for the jury to determine under the circumstances whether respondent saw appellant prior to the time he said he did and in time to have avoided the accident in the exercise of ordinary care after he realized or ought to have realized that she was unaware of her perilous position.

As stated in the late case of *Haerdter* v. *Johnson*, 92 Cal. App.2d 547, 550 [207 P.2d 855]: "There is abundant authority that 'notwithstanding there may be a total absence of any positive testimony that the defendant actually knew of plaintiff's danger, and even though the defendant denies seeing the plaintiff at all, the doctrine of the last clear chance may be invoked and applied where the *facts and circumstances* are such as *would justify the jury in finding that* despite the defendant's denial of knowledge or the absence of direct testimony on the subject, *he was actually aware of plaintiff's danger in time to* avert the accident; in other words, that he "must have known" of plaintiff's danger.' (Emphasis added.) *Gillette* v. *City of San Francisco*, 58 Cal.App.2d 434, 442 [136

 

P.2d 611] (second Gillette appeal; see prior appeal, 41 Cal. App.2d 758 [107 P.2d 627]) ; Accord . . ."

In the circumstances, it was prejudicial error to refuse to instruct the jury on the doctrine of the last clear chance, because "It is settled law that each party is entitled to have his theory of the case go to the jury, and requested instructions, which are proper in form and substance, should not be refused, merely because the trial court does not accept the theory upon which a party relies." (*Kelley* v. *City etc. of San Francisco*, 58 Cal.App.2d 872, 876 [137 P.2d 719].)

The judgment is reversed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied January 5, 1950, and respondents' petition for a hearing by the Supreme Court was denied February 8, 1950. Schauer, J., voted for a hearing.